**In re David J. MEARS and Phyllis S. Mears, Debtors.**

Bankruptcy No. 87–01199–BKC–SMW.

United States Bankruptcy Court, S.D. Florida.

June 28, 1988.

Robert L. Roth, Keith, Mack, Lewis & Allison, R. Hugh Lumpkin, Miami, Fla., for Flagler.

Raymond B. Ray, Ft. Lauderdale, Fla., for debtors.

Neiwirth & Neiwirth, P.A. by Arthur C. Neiwirth, Fort Lauderdale, Fla., for Midlantic.

McCune, Hiaasen, Crum, Ferris, & Gardner, P.A., Harry S. Raleigh, Jr., Ft. Lauderdale, Fla., for First American Bank.

Schantz, Schatzman, Aaronson & Berlin, P.A., Geoffrey S. Aaronson, Miami, Fla., for Orange State Bank.

Ira F. Gropper, Hollywood, Fla., for Fidelity and Deposit Co. of Maryland.

ORDER DETERMINING SECURED STATUS OF FLAGLER FEDERAL SAVINGS AND LOAN ASSOCIATION

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CASE came before the Court on June 6, 1988, upon the Debtors' Motion for

Order Determining Secured Status of Creditor, Flagler Federal Savings and Loan Association, and the Court, having examined the evidence presented, considered the arguments of counsel, and being otherwise duly advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

The facts relevant to the instant motion are not in dispute. The debtors own various pieces of real property which are subject to notes and fully cross collateralized mortgages held by Flagler Federal Savings and Loan Association ("Flagler"). Flagler also holds duly recorded assignments of rents on each of the properties, which assignments were properly recorded in the public records simultaneous to the recording of the notes and mortgages. At the time of the filing of the Chapter 11 proceeding, the debtors were in default to Flagler on the notes and mortgages, but upon the filing of the Chapter 11 Flagler was stayed, pursuant to 11 U.S.C. Section 362, from taking any further action to foreclose or otherwise protect its interest in the properties.

On June 24, 1987, a hearing was held on the debtors' Motion for Use of Cash Collateral and the objections to that motion filed by Flagler. On June 25, 1987, the Court entered separate orders relating to each of the properties subject to the notes, mortgages and assignments of rents held by Flagler. The orders provided for the use of cash collateral by the debtors and for the escrow, or sequestration, of the balance of any rental revenues remaining after the management of the properties in accordance with the use of cash collateral allowance by the Court, the cash collateral consisting of rental revenues from these various properties. The orders also provided that, "any excess revenue shall be paid to the first mortgage holder, Flagler Federal Savings and Loan Association." The debtors did not turn over the excess revenues to Flagler in accordance with the June 25th orders and, at this time, the approximate amount of $425,000.00 has accrued in the account of the debtors and their counsel, such amount being the excess revenues derived from rents on the properties subject to the notes, mortgages and assignments of rents of Flagler.

■ The parties agreed that a deficiency amount will be due to Flagler substantially in excess of the approximate $425,000.00 in available rental revenues from these properties. Accordingly, Flagler requests the turnover of the escrowed funds pursuant to the June 25th orders and the determination of the security interest of Flagler in all such rental revenues from these properties pursuant to their notes, mortgages and assignments of rents.

Various unsecured creditors ("the objecting creditors") object to Flagler receiving these funds arguing that Flagler is not a secured creditor with respect to the rental revenues since Flagler did not file a UCC–1 Financing Statement with the Secretary of State of Florida for the assignments of rents and, therefore, does not hold a perfected security interest in the rents. The objecting creditors argue that the funds should be added to the fund proposed to be distributed to unsecured creditors pursuant to the debtors' confirmed Chapter 11 plan thereby substantially increasing the dividend to unsecured creditors. However, based upon the acknowledged deficiency due to Flagler and for the reasons hereafter stated, the Court hereby finds that Flagler is fully perfected in the subject rents and that all such rents should be immediately turned over to Flagler by the debtors.

In *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the Supreme Court established that the rights to rents and profits realized by mortgaged property is to be determined by the laws of the state in which the property is located rather than by federal law. The Court must therefore apply Florida law to the case at bar.

Under Florida common law a mortgagee is not entitled to any of the rents and profits derived from property unless the mortgagee obtained an order of sequestration or actually took possession of the property either by consent or by the appointment of a receiver. See *Bornstein v. Somerson*, 341 So.2d 1043, 1048 (Fla. 2d DCA

1977); *White v. Anthony Inv. Co.*, 119 Fla. 108, 160 So. 881, 882 (1935); *Carolina Portland Cement Co. v. Baumgartner*, 99 Fla. 987, 128 So. 241, 246 (1930); *In the Matter of Hamlin's Landing Joint Venture*, 77 B.R. 916 (Bkrtcy.M.D.Fla.1987); *In re: Parham*, 72 B.R. 604 (Bkrtcy.M.D. Fla.1987).

However, the Fifth Circuit Court of Appeals, recognized in *Florida National Bank of Jacksonville v. United States*, 87 F.2d 896 (5th Cir.1937), that the filing of a bankruptcy proceeding and the institution of the automatic stay prevents a creditor secured in rents of a property from proceeding in state court to obtain an order of sequestration, possession or the appointment of a receiver. In the *Florida National Bank* case, the Fifth Circuit held that, when the mortgagee had obtained in the bankruptcy proceeding the appointment of a trustee and an order sequestering the rental income from the mortgaged property it was in effect a receivership.

The right of a secured creditor to perfect its interest in rental assignments on a post-bankruptcy petition basis is specifically permitted under 11 U.S.C. Section 546(b). Under 11 U.S.C. Section 546(b), if the state law requires the seizure of property or the commencement of an action to accomplish perfection of a security interest, and the property has not been seized or an action has not been commenced before the date of the filing of the bankruptcy petition, the interest in the property may be perfected during the bankruptcy proceeding by the entry of a sequestration order. This procedure has been specifically recognized in various jurisdictions in numerous cases including *In the Matter of Hamlin's Landing Joint Venture, supra; In the Matter of Selden*, 62 B.R. 954 (Bkrtcy.Neb.1986); *In re: Casbeer*, 793 F.2d 1436 (5th Cir. 1986); *In re: Anderson*, 50 B.R. 728 (U.S. D.C.Neb.1985); *In the Matter of Village Properties Limited*, 723 F.2d 441 (5th Cir. 1984); *Groves v. Fresno Guarantee Savings and Loan Association*, 373 F.2d 440 (9th Cir.1967); *Florida National Bank of Jacksonville v. United States, supra.*

In each of the above cases, the courts recognized that since the filing of a bankruptcy petition interferes with the ability of a creditor to perfect its interests under state law, the Bankruptcy Code permits the perfection of such interest on a post-petition basis. It is only where the creditor fails to perfect the interest during the bankruptcy proceeding that the courts find that the creditor has failed to perfect its security interest in the rents derived from mortgaged property. In the case at bar, the Court finds that Flagler obtained the entry of a cash collateral and sequestration order during the bankruptcy proceeding, thereby perfecting its security interest in the rental proceeds of these properties.

In addition to Flagler's perfection under Florida common law, Florida Statute, Section 697.07, provides that where an assignment of rents is made with a mortgage the assignment becomes absolute upon the mortgagor's default, operative upon written demand by the mortgagee. The effective date of the statute is October 1, 1987, but there is no indication as to whether the statute is prospective in application or applies to all mortgages and rent assignments existing at the time of its enactment. It is probable that the statute applies to this case in that it is apparently procedural in nature and does not specify only prospective application. See *In Re: Aloma Square, Inc.*, 85 B.R. 623 (Bkrtcy.M.D.Fla. 1988). However, a determination as to the applicability of the statute is not necessary to a decision in this case in that Flagler has not only perfected its security interest in the rents pursuant to this statute, but has also perfected its security interest in the rents in accordance with the previous requirements for doing so as set forth in various Florida and federal case law.

The objecting creditors also argue that notice of the entry of the cash collateral and sequestration orders was insufficient to constitute perfection. It is undisputed that the creditors were aware of the existence of these orders as early as November, 1987. Throughout the course of the proceedings and at numerous hearings there were no objections raised to the use

**422**

of cash collateral by the debtors or to the terms of the sequestration order as entered by the Court. Therefore, the Court finds that there was no prejudice to the objecting creditors as a result of the type of notice given for the entry of the orders.

 This situation is unlike prior decisions by this and other courts which relate to assignment of lease rights and not to rents. See *In re: Air Florida System, Inc.,* 48 B.R. 437 (Bkrtcy.S.D.Fla.1985); *In the Matter of Associated Air Services, Inc.,* 42 B.R. 768 (Bkrtcy.S.D.Fla.1984); *In re: Boogaart of Florida, Inc.,* 17 B.R. 480 (Bkrtcy.S.D.Fla.1981); and *Gould, Inc. v. Hydro–Ski International Corporation,* 287 So.2d 115 (Fla. 4th DCA 1973). These cases do not hold that recording of an assignment of rents with the Secretary of State through the filing of a UCC–1 Financing Statement is necessary for perfection of Flagler's security interest in the rents under the circumstances presented in this case.

The *Boogaart* case, decided by this Court, held that where a creditor had a security interest with a description that the lien was in all the debtor's "contract rights", then such a filing with the Secretary of State, though not required, would create lien rights in a lease of the debtor. The case did not hold that in order to perfect an interest in the lease such recording was required but, rather, where such recording had occurred, perfection in the lease was complete. The same is true of the *Gould* case, which this Court relied on in deciding the *Boogaart* case. Similarly, this Court's decision in the *Air Florida System, Inc.* case related to a leasehold and not to an assignment of rents and, additionally, did not involve the post-petition perfection allowed with an assignment of rents pursuant to the previously cited cases and the law of the State of Florida. Accordingly, that case has no application to the motion before the Court. The decision in the *Associated Air Services* case only contains dicta at page 769 that under Florida law the UCC does govern the assignment of leases. There is no mention of assignment of rents at all and, the Court goes on to state with respect to leases only that it "... does not make a final determination in that regard at this time". Based upon the foregoing, it is hereby:

ORDERED AND ADJUDGED that

1. Flagler has a perfected lien pursuant to its assignments of rent in all rental revenues held by the debtors with respect to the subject mortgaged properties, said perfection having occurred as of the time of the entry of the orders on cash collateral and sequestration of rents.

2. The debtors and their counsel shall forthwith turnover to Flagler all escrowed funds derived from the properties subject to the notes, mortgages and assignments of rents held by Flagler.