**In re E.L. BRACKIN, Jr., d/b/a E.L. Brackin, d/b/a ELB Properties, d/b/a Terrace Oakes Apartments and Townhouses, d/b/a South Terrace Townhomes, Debtor.**

**Bankruptcy No. 93–05168–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 20, 1993.

Malka Isaac, for debtor.

Kevin H. Graham, for Seaboard Sav. Bank, FSB.

Sara Kistler, Asst. U.S. trustee.

**ORDER ON SEABOARD'S EMERGENCY MOTION TO ENJOIN AND PROHIBIT DEBTOR'S USE OF RENTS OR PROFITS, AND MOTION FOR ABANDONMENT AND RELIEF FROM STAY**

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a Motion to Enjoin and Prohibit Debtor's Use of Rents or

Profits, and a Motion for Abandonment and Relief from Stay filed by Seaboard Savings Bank, F.S.B. (Seaboard). In its Motion, Seaboard seeks the entry of an Order prohibiting E.L. Brackin, Jr. (Debtor) from using the rents, income, revenue, or profits (rents) derived from real property referred to as ELB Properties, Terrace Oakes Apartments and Townhouses, and South Terrace Townhomes owned by the Debtor. In addition, Seaboard seeks an Order allowing Seaboard to collect all future rental payments and requiring the Debtor to immediately pay over to Seaboard any rents already collected by the Debtor. The facts relevant to the resolution of this controversy as they appear in the record are as follows:

Prior to December 1990, the Debtor entered into five separate loan agreements with Seaboard and granted Seaboard mortgages on numerous parcels of real properties (Mortgaged Properties). Under the Loan documents, the Debtor also executed an Assignment of Rent to Seaboard for the rents derived from the Mortgaged Properties, pledging same as additional collateral. The Debtor subsequently defaulted on the Loans and Seaboard notified the Debtor of the defaults and made a written demand for all rents and payment of the balance due on the loans secured by the mortgage.

The Debtor failed to comply. In order to enforce its rights, Seaboard commenced a foreclosure action in the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida. In its complaint, Seaboard sought to foreclose its mortgage lien, sought a money judgment based on the promissory notes executed by the Debtor, and sought an Order recognizing Seaboard's ownership interest in the rents derived from the property subject to Seaboard's mortgage. On December 6, 1990, the Circuit Court granted Seaboard Final Judgment In Foreclosure and entered a money judgment based on the promissory notes in the amount of One Million Seven Hundred Twenty–Eight Thousand Nine Hundred Seven and 13/100 Dollars ($1,728,907.13), plus interest and costs. (Exh. # 1). In its Final Judgment, the Cir-

cuit Court specifically held that Seaboard had a perfected lien in all rents derived from the Mortgaged Properties pursuant to the Assignments of Rent and that:

It is expressly determined that Seaboard has an *absolute ownership* interest in and to said rental revenues in accordance with *Florida Statutes* § 697.07. During the pendency of the Stay imposed by paragraph 10 hereof, Defendant Brackin shall receive all rental revenues derived from the Property, including all subsidies received from governmental entities, as agent for Plaintiff, and shall apply the same to the satisfaction of the payment obligations set forth in Paragraph 10. Upon the filing of the Affidavit contemplated by Paragraph 11 hereof, Defendant Brackin's right to receive all revenues derived from the Property, as agent for Plaintiff, shall automatically terminate and Defendant Brackin shall deliver all said rental revenue to Plaintiff immediately upon receipt and shall do all things necessary to have said rental revenues paid directly to Plaintiff. (Emphasis added)

Pursuant to the Final Judgment, Seaboard was not authorized to proceed to enforce the Final Judgment as long as the Debtor made the payments required by the Final Judgment and fulfilled his other obligations set forth by the Order of the Circuit Court. It is without dispute that the Debtor failed to make the required payments. In order to enforce its right to the rent, Seaboard's counsel filed the Affidavit required by the Final Judgment. Pursuant to the Final Judgment, the Circuit Court then set May 12, 1993 as the date for the public sale of the property of the Debtor. The Debtor filed his Petition under Chapter 11 of the Bankruptcy Code on May 7, 1993 which, of course, stopped all further action against the real properties involved.

■ Based on the foregoing, Seaboard asserts that, pursuant to the Final Judgment and Florida Statute 697.07, it is now the owner of the rents and all the rent collected ceased to be property of the Debtor's estate, therefore, the request for all

rents collected and all rents owing to Seaboard should be granted.

It is well established that property rights are determined by local and not by federal law. *Butner v. United States,* 440 U.S. 48, 56, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Florida Statute § 697.07 (1989) provides:

> A mortgage may provide for an assignment of rents. If such an assignment is made, *such assignment shall be absolute upon the mortgagor's default, becoming operative upon written demand made by the mortgagee.* Upon application by the mortgagee, a court of competent jurisdiction may require the mortgagor to deposit such rents in the registry of the court pending adjudication of the mortgagee's right to the rents, any payments therefrom to be made solely to protect the Mortgaged Properties and meet the Mortgagor's lawful obligations in connection with the property. Any undisbursed portion of said rents shall be disbursed in accordance with the Court's final judgment or decree. (Emphasis added)

This Court in *In re One Fourth Street North, Ltd.,* 103 B.R. 320 (Bankr.M.D.Fla. 1989), held that the Debtor was authorized to use the rent as cash collateral to maintain operating expenses of the property. This Court stated that § 697.07 was not meant to create an outright transfer of ownership interest in rents where none existed before, but to create a more simplified mechanism for perfection of the right to sequester rents to be applied to the indebtedness secured by the mortgage and was intended to be nothing more than additional security. This Court explained that this now can be accomplished upon written demand for the rent without necessity of any court proceedings, the statute changing the procedural manner in which an assignment of rents becomes effective. The Court held that § 697.07 contemplates further judicial proceedings requiring a determination of the mortgagee's right to the rents. The crucial difference between *One Fourth Street* and the instant case is that in the instant case the Circuit Court entered a final judgment adjudicating the right to the rent, thereby triggering the language in the statute.

At the Emergency Hearing, counsel for Debtor cited *The Matter of Gorrow Development Corp.,* 135 B.R. 427 (Bankr. M.D.Fla.1991), a decision in this District which, according to the Debtor's counsel, held that the rents derived from the mortgaged property was not the property of the mortgagee but was property of the Debtors. Even a perfunctory reading of *Gorrow* leaves no doubt that the case is distinguishable from the facts involved in the present instance. The mortgagee in *Gorrow* was authorized to collect rents as an agent for the Debtor but was obligated to pay the necessary expenses of operation and maintenance of the real property incurred by the Debtor. In that case the Court held that the Circuit Court order or sequestration did not operate as an absolute assignment because an absolute assignment would vest in a mortgagee *all* right, title, and interest in rents. More specifically, the mortgagee in *Gorrow* did not possess sole interest in the rent because the mortgagee was not entitled to dispose of the rent as it chose, notwithstanding the "absolute ownership" language seen in the statute and the state court judgment. On the other extreme, the Circuit Court in the present case in no way restrained Seaboard's use of the rental funds. Thus there is no valid reason to find anything but that the Final Judgment entered by the Circuit Court on December 6, 1990, completely divested the Debtor of any interest he had in the rents and profits derived from the mortgaged property.

■ In the alternative, counsel for the Debtor contends that Seaboard has waived any right to ownership interests by not collecting rent itself. This argument is unpersuasive because a rental agent may collect rent on behalf of its principal without jeopardizing the principal's ownership rights. More importantly, the Final Judgment provided that Seaboard had absolute ownership even though the Debtor was to receive the rent unless and until Seaboard filed an Affidavit setting forth the Debtor's

failure to timely tender the payments in accordance with the final judgment.

In view of the foregoing, based on the Debtor's default and entry of Final Judgment divesting the Debtor of any interest he had in the rents, and Seaboard's compliance with the provisions of § 697.07, the Assignment of Rents operated as an absolute transfer of the income stream to the mortgagee prior to the filing of the Bankruptcy Petition. See *In re Sunrise Indus. Development Corp.*, 121 B.R. 911 (Bankr. S.D.Fla.1990).

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Enjoin and Prohibit Debtor's Use of Rents or Profits is hereby Granted, and the Debtor shall forthwith deliver all rental revenue to Seaboard immediately upon receipts and shall do all things necessary to have rental revenues paid directly to Seaboard. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Relief from Stay by Seaboard Savings Bank, F.S.B., be, and the same is hereby, granted and the automatic stay is lifted and Seaboard is permitted to pursue its in rem remedies against the rental revenues.

DONE AND ORDERED.